**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 21 B 4903 |
| | ) | |
| TRACY DRAKE, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Judge David D. Cleary |

**MEMORANDUM OPINION**

This matter comes before the court on confirmation of the chapter 13 plan proposed by

Tracy Drake ("Debtor") and on Debtor's objection to the proof of claim ("Claim Objection")

filed by Integrity Investment Fund, LLC ("Integrity").

Integrity filed a claim based on its payment of outstanding real estate taxes and statutory

fees and costs accrued on the Debtor's residence.  Integrity does not accept the treatment of its

claim in the Debtor's plan, including the interest rate payable on the claim for real estate taxes.

Integrity filed an objection to confirmation of the plan.  The court entered a scheduling order

allowing Debtor time to file a response and Integrity to file a reply.  Shortly after Integrity filed

its reply, Debtor filed the Claim Objection.  After reviewing the papers, the court requested

supplemental briefing on a limited question related to the interest rate applicable to real estate

taxes.

Having reviewed all the papers submitted and heard the arguments of the parties, the

court will enter an order sustaining Integrity's objection to confirmation.[1]  In order to confirm

her plan, Debtor must pay 18% interest on the portion of Integrity's claim attributable to the Sold

---

[1] Integrity makes certain requests in its objection to confirmation (e.g., requiring Debtor to segregate funds for future real estate taxes, entry of a default order).  Integrity also argues that Debtor's budget is too lean, and as a result she will not be able to make all payments under the plan and to comply with the plan.  11 U.S.C. § 1325(a)(6).  This Memorandum Opinion addresses only the interest rate that Debtor must pay to provide Integrity with the present value of a portion of its allowed claim.  These other requests, and the feasibility argument, can be addressed at the reset hearing on confirmation.

Taxes and Subsequent Taxes, as defined herein, as well as a *Till*-determined rate on the remainder of Integrity's claim.  Furthermore, the parties advised in court on October 18, 2021, that they reached agreement on the amount of Integrity's claim.  The court will enter an order sustaining the Claim Objection and allowing Integrity time to amend its proof of claim pursuant to this Memorandum Opinion and the agreement of the parties.

## I.      JURISDICTION

The court has subject matter jurisdiction under 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.  These matters are core proceedings under 28 U.S.C. § 157(b)(2)(B) and (L).  Venue is proper under 28 U.S.C. § 1409(a).

## II.      BACKGROUND

Debtor owns real property at 12343 S. May Street in Calumet Park, Illinois (the "May Street Property").  As with nearly all real property in Illinois, property taxes accrued on the May Street Property.

Illinois property taxes are due during the year after they accrue.  If no one pays the taxes, the county has several options for monetizing its right to payment.  The most frequently exercised of these options is the tax sale.  The "county applies for a judgment and order of sale against the property." *In re LaMont*, 740 F.3d 397, 400 (7th Cir. 2014).  Once that is accomplished, the county holds a "tax sale" at which potential purchasers vie to pay the county all the taxes due on the property.  *See LaMont,* 740 F.3d at 400.  The winning purchaser receives a "Certificate of Purchase," as Integrity did.  35 ILCS 200/21-250.

After the sale comes a waiting game.  The delinquent taxpayer may redeem the property "by paying the tax purchaser, through the county clerk, all amounts due (which includes

2

everything the tax purchaser paid to the county plus any penalty interest)." *LaMont*, 740 F.3d at 400-01.  If the taxpayer redeems the property, the clerk then repays the purchaser the amount it paid at the tax sale.  If the redemption period passes without action from the delinquent taxpayer, however, the tax purchaser can apply for a tax deed.  35 ILCS 200/22-30; *LaMont*, 740 F.3d at 401.

In this case, Debtor failed to pay her 2015 and 2016 property taxes.  On May 4, 2018, Integrity purchased the delinquent 2015 taxes in the amount of $5,143.79 and the delinquent 2016 taxes in the amount of $3,894.19 (collectively, the "Sold Taxes") at the Cook County Collector's annual tax sale.  Integrity also paid two statutory fees, $200.00 for the Treasurer's fee and $47.00 for the Clerk's fee, and accrued interest on the taxes.  The total amount of the tax sale was $10,075.78.

Debtor then failed to pay both the first and second installments of property taxes for tax years 2017, 2018 and 2019 (collectively, the "Subsequent Taxes").  "Illinois courts have consistently treated the tax purchaser's interest as a tax lien." *LaMont*, 740 F.3d at 404.  35 ILCS 200/21-165 provides that "any lienholder of record may … pay the taxes … to the county collector at any time on or before the business day immediately preceding the day the taxes are sold, and the collector must accept those payments." As a lienholder, therefore, Integrity was entitled to and did pay the Subsequent Taxes.

Under the Illinois law described above, Debtor had the opportunity to redeem by paying the amount Integrity paid for the Sold Taxes, plus interest and a penalty, and the amount Integrity paid for the Subsequent Taxes, plus interest and a penalty.  *See* 35 ILCS 200/21-355(c). According to the Estimate of Cost of Redemption attached to Integrity's proof of claim, Debtor would also pay the costs included in the 2015/2016 tax sale as well as various fees (collectively,

3

the "Charges").  Integrity extended to April 16, 2021, the period during which Debtor or any party could redeem ("Redemption Period").

On November 23, 2020, Integrity filed a petition for tax deed in the Circuit Court of Cook County (the "State Court Action").  35 ILCS 200/22-30.  Debtor does not dispute that under Illinois law, Integrity timely provided notice of the expiration date of the Redemption Period to her and to all persons with an interest in the May Street Property.  Neither Debtor nor any other party timely exercised the right to redeem.

Debtor filed a voluntary petition for relief under chapter 13 on April 14, 2021, two days before the expiration of the Redemption Period.  She filed her plan on May 12, 2021, proposing to pay Integrity $30,711 at an interest rate of 0.5%.  Debtor filed an amended plan on June 25, 2021, providing the same treatment.

Integrity filed a proof of claim in the amount of $32,808.96.  Debtor objected to Integrity's proof of claim as to amount, but not interest.[2]  The parties explained in court on October 18, 2021, that they reached agreement on the amount of Integrity's claim.  Debtor's proposed plan will pay Cook County the first installment of 2020 taxes, which are delinquent, and will pay Integrity all taxes owed for the 2019 tax year and prior years.  According to Section 3.2 of her plan, Debtor proposes to pay the Cook County Treasurer 18% interest on the delinquent 2020 taxes.

Integrity objected to Debtor's plan on the grounds that it improperly attempts to modify Integrity's rights.  Specifically, Debtor does not propose to pay Integrity the appropriate interest

---

[2] Debtor disputed the interest rate in Integrity's proof of claim but acknowledged in paragraph 19 of the Claim Objection that the issue of what interest rate she must pay in her plan is the subject of Integrity's objection to confirmation.

4

rate on its claim.  The issue before the court is, what is the correct interest rate that Debtor must pay Integrity on its claim in her chapter 13 plan?

### III.   LEGAL DISCUSSION

11 U.S.C. § 1325(a)(5) provides that the court shall confirm a plan if:

(5) with respect to each allowed secured claim provided for by the plan--

 (A) the holder of such claim has accepted the plan;

 (B) (i) the plan provides that--

   (I) the holder of such claim retain the lien securing such claim until the earlier of--

    (aa) the payment of the underlying debt determined under nonbankruptcy law; or

    (bb) discharge under section 1328; and

   (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

  (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

  (iii) if--

   (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

   (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

 (C) the debtor surrenders the property securing such claim to such holder[.]

Integrity objected to confirmation, so it did not accept the plan under § 1325(a)(5)(A).

Debtor does not intend to surrender the May Street Property, so § 1325(a)(5)(C) does not apply.

Therefore, to satisfy the requirements for confirmation, Debtor's plan must provide that Integrity retain its lien, receive distributions in the allowed amount of its claim, and receive equal monthly payments.  11 U.S.C. § 1325(a)(5)(B).

To provide Integrity with the allowed amount of its claim in her plan, Debtor must pay interest on the claim.  11 U.S.C. § 1325(a)(5)(B)(ii).  *See Till v. SCS Credit Corp.*, 541 U.S. 465, 469 (2004) (the amount of each monthly payment "must be calibrated to ensure that, over time, the creditor receives disbursements whose total present value equals or exceeds that of the allowed claim") (footnote omitted).  *Till* held that for most secured claims, the appropriate interest rate is the prime rate, adjusted to account for the risk of nonpayment.

When the secured claim is a tax claim, however, *Till's* interest rate formula does not apply.  Instead, the interest rate paid on tax claims in bankruptcy cases is determined under 11 U.S.C. § 511 (emphasis added):

> (a) If any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or *the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim*, the rate of interest shall be the rate determined under applicable nonbankruptcy law.

> (b) In the case of taxes paid under a confirmed plan under this title, the rate of interest shall be determined as of the calendar month in which the plan is confirmed.

As to the Sold Taxes and the Subsequent Taxes, section 511 is applicable rather than *Till*.[3]  Indeed, "[m]ost courts addressing the claims of tax sale certificate holders under section 511 of the Code have determined that such claims are 'tax claims' as that term is used in section 511."  *In re Ford*, 623 B.R. 381, 389 (Bankr. D. Md. 2020).  *See In re Villasenor*, 581 B.R. 546,

---

[3] The appropriate interest rate on the portion of Integrity's claim that is not attributable to the Sold Taxes and the Subsequent Taxes is determined by *Till* and is not the subject of this Memorandum Opinion.

548 (Bankr. N.D. Ill. 2017) (Schmetterer, J.).  Section 511(a), therefore, requires the court to review nonbankruptcy law to determine the appropriate rate of interest on a tax claim.

Debtor proposed 0.5% interest for Integrity's claim.  According to her response to Integrity's objection to confirmation, Debtor chose this rate because it is the federal post-judgment interest rate in 28 U.S.C. § 1961.  Her reasoning was that Illinois law does not provide an interest rate, so the applicable nonbankruptcy law is federal law.

In support of her position, Debtor cited a Ninth Circuit case that held that the "legal rate of interest" payable to creditors in a chapter 7 case is the federal post-judgment rate of 28 U.S.C. § 1961(a).  *Onink v. Cardelucci* (*In re Cardelucci*), 285 F.3d 1231 (9th Cir. 2002).  Debtor then concluded that if an allowed claim is a federal judgment, interest on that allowed claim must be calculated by using the post-judgment rate in 28 U.S.C. § 1961(a):

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding. [sic] the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

At the time Debtor filed her petition, the interest rate under § 1961(a) was 0.06%.  She proposed a higher interest rate of 0.5%.

Debtor's position is untenable.  The *Cardelucci* panel began its decision by noting that the appeal before it presented a *narrow* issue – how to calculate post-petition interest under 11 U.S.C. § 726(a)(5).  That subsection provides a fifth priority in chapter 7 distributions to "payment of interest *at the legal rate* from the date of the filing of the petition[.]" (Emphasis added.)

The matter before this court does not involve a chapter 7 distribution.  11 U.S.C. § 726(a)(5) does not apply in chapter 13.  11 U.S.C. § 103(b).[4]  Integrity holds a tax claim, and the Bankruptcy Code includes a section that specifically addresses the rate of interest on tax claims. "[I]t is a commonplace of statutory construction that the specific governs the general."  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quotation omitted). Under 11 U.S.C. § 511, the rate of interest to enable a creditor to receive the present value of the allowed amount of a tax claim "shall be the rate determined under applicable nonbankruptcy law."

Congress added section 511 to the Bankruptcy Code in 2005, three years after the Ninth Circuit issued *Cardelucci*.  If Congress intended for tax claims to receive interest at the federal judgment rate, it could have used the same language as it did in § 726(a)(5).  It did not.  Instead of allowing tax claims to receive "interest at the legal rate," Congress directed bankruptcy courts to refer to "applicable nonbankruptcy law" when calculating the interest due on tax claims.

Integrity's claim arises under Illinois law.  Therefore, Illinois law is the applicable nonbankruptcy law.  The appropriate interest rate is found in the Illinois Property Tax Code, the statute "that governs the correct interest rate to be paid to a real estate tax purchaser." *Villasenor*, 581 B.R. at 548.

In *Villasenor*, Fair Deal of Illinois, Inc. ("Fair Deal") purchased the debtor's unpaid property taxes from Cook County.  When the debtor failed to pay real estate taxes for the subsequent tax years, Fair Deal paid them each time they became due.  Villasenor then filed for

---

[4] Debtor cites *In re Beguelin*, 220 B.R. 94 (B.A.P. 9th Cir. 1998) to show that *Cardelucci's* reasoning was used first in a decision in a chapter 13 case.  In *Beguelin*, the panel determined that the reference to a chapter 7 liquidation in § 1325(a)(4) led to the conclusion that the "legal rate" language of § 726(a)(5) applied to determine the interest rate payable to an unsecured claim.  In this case, Integrity holds a secured claim.  Section 1325(a)(4) is not applicable and *Beguelin* is not persuasive precedent.

8

relief under chapter 13 and Fair Deal filed a proof of claim. Villasenor proposed to pay 0%

interest on that claim in his plan and objected to Fair Deal's assertion that it was entitled to an

"annual interest rate" of 24% on its claim.

To determine the appropriate rate of interest to which Fair Deal was entitled, the

*Villasenor* court considered three possibly relevant provisions of the Illinois Property Tax Code.

The first was 35 ILCS 200/21-25, which states in relevant part:

> Notwithstanding any other provision of law, if a taxpayer owes an arrearage of
> taxes due to an administrative error, and if the county collector sends a separate
> bill for that arrearage as provided in Section 14-41, then any part of the arrearage
> of taxes that remains unpaid on the day after the due date specified on that tax bill
> shall be deemed delinquent and shall bear interest after that date at the rate of 1
> 1/2% per month or portion thereof.

"'Administrative error' includes but is not limited to failure to include an extension for a taxing

district on the tax bill, an error in the calculations of tax rates or extensions or any other

mathematical error by the county clerk, or a defective coding by the county...." 35 ILCS

200/14-41. There is no allegation in this case that Debtor owed an arrearage due to an

administrative error, so this provision allowing for an 18% interest rate is inapplicable.

The *Villasenor* court next reviewed 35 ILCS 200/21-355(b). This section describes a

penalty that is calculated using the length of the redemption period and the interest rate bid at the

tax sale. It concerns a penalty rather than interest and applies only to the penalty amount at the

tax sale. Fair Deal conceded that this provision had nothing to do with its claim, "pertaining

only to the penalty amount at the original tax sale." *Villasenor*, 581 B.R. at 550. For this same

reason, section 355(b) does not provide the appropriate rate of interest for calculating the present

value of Integrity's claim.

The final section considered in *Villasenor* was 35 ILCS 200/21-355(c). The court

concluded that "[t]he crux of the dispute between Debtor and Fair Deal of Illinois concerns this

9

provision of the Illinois Property Tax Code." *Id.* at 550.  In order to redeem, a deposit shall be

made with the county clerk in the certificate of purchase amount and the accrued penalty plus:

> The total of all taxes, special assessments, accrued interest on those taxes and
> special assessments and costs charged in connection with the payment of those
> taxes or special assessments … which have been paid by the tax certificate holder
> on or after the date those taxes or special assessments became delinquent *together
> with 12% penalty on each amount so paid for each year or portion thereof
> intervening between the date of that payment and the date of redemption.*… The
> person redeeming shall also pay the amount of interest charged on the subsequent
> tax or special assessment and paid as a penalty by the tax certificate holder.

35 ILCS 200/21-355(c) (emphasis added).  According to *Villasenor*, "the statute allows for

imposition of a 12% penalty on the amounts paid by tax purchasers for subsequent tax years …

after the purchase of the initial taxes…."  581 B.R. at 550.  *See also In re Rogers*, Order Partially

Overruling Debtor's Amended Objection, 17 B 3337 (Bankr. N.D. Ill. Dec. 13, 2017) (Cassling,

J.) (unpublished order).  Therefore, the interest rate on Fair Deal's claim for taxes paid after the

tax sale was 12%.

The *Villasenor* debtor argued that this reading conflated the terms "interest" and

"penalty."  He cited three cases from the Sixth Circuit – one at the circuit level, one issued by the

Bankruptcy Appellate Panel and the third at the bankruptcy level – for the proposition that

oversecured creditors may not assess penalties against debtors.  *In re Corrin*, 849 F.3d 653 (6th

Cir. 2017); *In re Bratt*, 549 B.R. 462 (B.A.P. 6th Cir. 2016); *In re Gift*, 469 B.R. 800 (Bankr.

M.D. Tenn. 2012).  If oversecured creditors may not assess penalties, "any provision directly

referencing penalties … is wholly inapplicable in bankruptcy and thus, Fair Deal is not entitled

to any interest on its claim under this provision of the Illinois Property Tax Code."  581 B.R. at

550-51.

*Villasenor* rejected this argument, holding that in Illinois, a debtor must "present

evidence that a particular charge or interest rate is an 'unenforceable penalty.'"  *Id.* at 551.  The

10

*Villasenor* court then concluded that the debtor had not presented evidence that the penalty in 35 ILCS 200/21-355(c) was unenforceable, because he could have avoided it by exercising his right of redemption, and there was no evidence that the 12% rate would shock the conscience of the court. *Id.* Since the 12% penalty was not unenforceable, Fair Deal was entitled to that rate of interest for the portion of its claim based on the taxes it paid after the tax sale.

In the opinion of this court, however, 35 ILCS 200/21-355(c) does not resolve the question of what interest rate is applicable to Integrity's claim. The reason this section does not provide a resolution has nothing to do with the distinction between penalties and interest, or with whether this particular penalty is unenforceable. Instead, 35 ILCS 200/21-355(c) does not apply because of its plain language. It provides a "12% penalty on each amount so paid for each year or portion thereof intervening between the date of that payment and *the date of redemption*." (Emphasis added.) To conclude that section 355(c) governs, the court would have to assume that Debtor is exercising her right of redemption.

We know, however, that she is not. Debtor filed her petition for relief under chapter 13 two days before the Redemption Period expired. No one disputes that Debtor did not redeem the taxes prior to filing.

Neither is she redeeming the taxes through her plan. The Seventh Circuit explained at length that tax purchasers hold a claim against debtors that may be treated in bankruptcy. *LaMont*, 740 F.3d at 406-09. While outside of bankruptcy the taxpayer must pay the full redemption amount before the deadline, that is no longer the case once a debtor seeks relief under the Bankruptcy Code. The reason? "The plan is treating his secured claim, *not* formally redeeming the property." *Id.* at 409.

11

A later bankruptcy court decision noted the Circuit's clarification that "the passing of the redemption period is not a material event as it relates to the rights in question. A debtor whose period for redeeming taxes sold in Illinois has passed prior to commencing his or her case may nonetheless treat those taxes under a chapter 13 plan if a tax deed has not yet issued and recorded." *In re Robinson*, 577 B.R. 294, 299 (Bankr. N.D. Ill. 2017) (Barnes, J.), (citing *Smith v. SIPI, LLC* (*In re Smith*), 811 F.3d 228 (7th Cir. 2016); *LaMont*, 740 F.3d 397; *Smith v. SIPI, LLC* (*In re Smith*), 614 F.3d 654 (7th Cir. 2010)).  This is because a "debtor's right to redeem the property is separate from the debtor's right to treat the claim and the property." *Robinson*, 577 B.R. at 303.

Integrity holds a claim against the Debtor.  That claim is being treated in the bankruptcy case and paid through Debtor's plan.  Since the plan is treating Integrity's secured claim rather than exercising a right of redemption, the 12% penalty that 35 ILCS 200/21-355(c) imposes each year or portion thereof intervening between the date of payment and the date of redemption is inapplicable.

If 35 ILCS 200/21-355(c) does not apply to determine the appropriate interest rate on the portion of Integrity's claim attributable to the Sold Taxes and the Subsequent Taxes, the court must return to the Illinois Property Tax Code to determine whether another section is relevant. The answer is found in 35 ILCS 200/21-15:

> Except as otherwise provided in this Section or Section 21-40, all property upon which the first installment of taxes remains unpaid on the later of (i) June 1 or (ii) the day after the date specified on the real estate tax bill as the first installment due date annually shall be deemed delinquent and shall bear interest after that date at the rate of 1 1/2% per month or portion thereof. Except as otherwise provided in this Section or Section 21-40, all property upon which the second installment of taxes remains due and unpaid on the later of (i) September 1 or (ii) the day after the date specified on the real estate tax bill as the second installment due date, annually, shall be deemed delinquent and shall bear interest after that date at the same interest rate.

Integrity has a claim based on unpaid taxes. *See also In re Blackpool Investors Group, Ltd.*, 509 B.R. 470, 490 (Bankr. D.N.J. 2014) (finding that a tax sale certificate holder has a tax claim under 11 U.S.C. § 511(a)). Under this section of Illinois law, interest on unpaid taxes is calculated at 1.5% per month, or 18% per year. Therefore, the interest rate that must be paid on the Sold Taxes and the Subsequent Taxes to provide Integrity with the present value of its allowed claim is 18%.

Debtor argues that 35 ILCS 200/21-15 does not apply "because Debtor is not paying delinquent taxes, she is paying Integrity's claim amount." Debtor's Supplemental Brief at 1-2. But Integrity's claim against Debtor is based on delinquent taxes. When taxes are not paid by the due date (or a particular calendar date, whichever is later), those taxes are delinquent. As *Robinson* explains, what Integrity purchased was the "right to payment of delinquent real estate taxes and related costs, with collection remedies including a possible later transfer of ownership in the property." *Robinson*, 577 B.R. at 300.

Integrity holds a right to payment of delinquent taxes, which are the Sold Taxes and the Subsequent Taxes (the "Tax Claim"). Delinquent taxes bear interest after their due date "at the rate of 1 1/2% per month or portion thereof." 35 ILCS 200/21-15. Therefore, the interest rate on Integrity's Tax Claim is 18%.[5]

## CONCLUSION

For the reasons stated above, to satisfy the requirements of § 1325(a)(5)(B) and to pay Integrity the allowed amount of its claim, Debtor must propose a plan that provides 18% interest on Integrity's Tax Claim as well as a *Till*-determined rate on the remainder of Integrity's claim.

---

[5] As stated above in footnote 3, the appropriate interest rate for the portion of Integrity's claim not attributable to the Sold Taxes and the Subsequent Taxes will be determined under *Till*. The parties may agree on this rate, as is usually done. If they cannot agree, the court will set an evidentiary hearing to resolve the issue.

Debtor's current plan does not do so.  Therefore, the court will enter an order sustaining Integrity's objection to confirmation.  Since the parties advised the court that they reached agreement on the amount of Integrity's claim, the court will enter an order sustaining the Claim Objection and allowing Integrity time to amend its proof of claim.  The confirmation hearing will be reset to address all remaining issues.

Date:   February 23, 2022

_____
DAVID D. CLEARY
United States Bankruptcy Judge

14